IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO.  05-532 |
| ANTHONY SPRUILL | : | |

**MEMORANDUM**

**SURRICK, J.**                                                    **SEPTEMBER  8 , 2015**

Presently before the Court is Petitioner Anthony Spruill's *pro se*[1] Motion Under 28

U.S.C. § 2255 (ECF No. 109).   For the following reasons, Petitioner's Motion will be denied.

## I.        BACKGROUND

Petitioner Anthony Spruill was indicted on September 15, 2005 on one count of

possession with intent to distribute more than five kilograms of cocaine, in violation of 21

U.S.C. §§ 841(a) and (b)(1)(A).  (Indictment, ECF No. 1.)  The Government alleged that

between April 2003 and December 2004, Petitioner distributed at least 72 kilograms of cocaine,

often in the form of "crack," in the Strawberry Mansion neighborhood of Philadelphia.  (Gov't

Sent. Mem. 1, ECF No. 83.)  Shortly after his arrest on state criminal charges, Petitioner

admitted to cocaine distribution during interviews with Special Agent Edward J. Gallant of the

Federal Bureau of Investigation ("FBI").  (*Id*. at 4.)[2]

---

[1] We subject *pro se* pleadings to a liberal review.  *Estelle v. Gamble*, 429 U.S. 97, 106
(1976).  A *pro se* complaint, "however inartfully pleaded," is to be held to "less stringent
standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520
(1972).

[2] After his arrest, Petitioner met with Special Agent Gallant on several occasions.
Petitioner requested these meetings and on each occasion he was given the *Miranda* warning.

Petitioner's trial counsel, Christopher G. Furlong, filed a number of pretrial motions, including a motion to suppress Petitioner's inculpatory statements (Mot. to Suppress, ECF No. 27), a motion to compel discovery (Mot. to Compel, ECF No. 29), a motion to exclude evidence of Petitioner's prior convictions (Mot. in Limine, ECF No. 30), and a motion to dismiss the Indictment (Mot. to Dismiss, ECF No. 33).  Additional motions were filed related to the admission of evidence at trial, discovery, and allegedly prejudicial statements contained in charging documents.  (*See* ECF Nos. 31, 32, 35.)

On May 25, 2012, following a jury trial, Petitioner was found guilty.[3]  Petitioner filed a

---

During these meetings, Petitioner openly admitted to his drug dealing and gave Agent Gallant the details of his drug operation.  Petitioner's statements to Agent Gallant were the subject of a Motion to Suppress, which was denied by Memorandum and Order dated May 12, 2006 (ECF No. 44), and affirmed by the Third Circuit on direct appeal.  *See United States v. Spruill*, 373 F. App'x 318 (3d Cir. 2010).

[3]  The guilty verdict was based upon the following evidence and testimony presented at trial:

On May 10, 2005, Special Agent Edward J. Gallant III of the Federal Bureau of Investigation learned that the Philadelphia Police Department had issued a warrant for Defendant.  Subsequently, Gallant arrested Defendant in the Strawberry Mansion area of Philadelphia.  Gallant along with Detective Sean Brennan transported Defendant to the Philadelphia Police Department in an unmarked police car.  While in the car, Gallant advised Defendant not to speak but to listen.  Gallant explained to Defendant that he was under investigation for federal drug trafficking charges and that the FBI had arrested several individuals who had received drugs from Defendant.  Gallant indicated that Defendant would eventually be indicted on the federal charges, and that Defendant should consider cooperating with the FBI.  The next day, while incarcerated, Defendant called Gallant and requested that Gallant meet him at the correctional facility.   On May 12th, Gallant and Brennan met with Defendant at the correctional facility, and Defendant gave a voluntary statement to Gallant.  Defendant later gave two more voluntary statements to Gallant.

During these interviews, Defendant told Gallant that he was trafficking in as much as thirty kilograms of cocaine a month during 2003 and 2004.  He also told Gallant that Alexander Medley was his supplier and that he had paid Medley as much as $700,000 for one large shipment of cocaine.  Defendant also told Gallant that he paid Medley approximately $24,000 per kilogram of cocaine.  In April of 2003,

*pro se* motion, seeking either a judgment of acquittal or new trial (ECF No. 72), which was denied (ECF No. 79). Petitioner was sentenced to 405 months in prison. (Judgment, ECF No. 86.) On August 4, 2015, that sentence was reduced, pursuant to 18 U.S.C. § 3582(c)(2), and Amendment 782, to 327 months. (ECF No. 125.)

Mark E. Cedrone was appointed as Petitioner's counsel for purposes of appeal. (ECF No. 92.) Petitioner filed a direct appeal to the United States Court of Appeals for the Third Circuit, which denied his appeal and affirmed his conviction and sentence on April 13, 2010.

---

Defendant was provided half a kilogram of cocaine by Medley. Other transactions with Medley involved twelve, fifteen, and thirty kilograms of cocaine. Gallant testified that Defendant told him he had delivered at least seventy-two kilograms of cocaine. Defendant explained to Gallant that he supplied cocaine and/or crack to Jermain Burston, Vernon Douglas, Reginald Alexander, and Malik Mohammed. Defendant also stated that he had been providing Antonio Williams with kilogram quantities of cocaine.

Jermain Burston testified at trial that Defendant supplied him with crack cocaine for about a year and a half and that the amounts of crack cocaine he bought from Defendant ranged from four and a half ounces to eighteen ounces. Burston further testified that he was with Defendant when Defendant gave approximately nine ounces of cocaine to another individual named Spider, the street name for Vernon Douglas. On another occasion Burston observed Defendant demand payment from Spider and observed Spider give Defendant money.

Ricardo Castro also testified at trial that he supplied cocaine on behalf of his father-in-law, Alexander Medley, to Defendant on approximately five to eight occasions in 2002 and 2003 and in amounts ranging from two kilograms to fifteen kilograms. Typically, Castro would not supply Defendant with a new quantity of cocaine until Defendant had paid in full for the previous quantity. Defendant paid Castro in installments, approximately $100,000 for five kilograms.

Special Agent Gallant testified that Defendant had told him that he stored cocaine in his apartment at 2201 Bryn Mawr Avenue in Philadelphia and in the car of Derrick Shaw, his business partner. Defendant also said that he kept a pistol, rifle, and machine gun in his apartment, as well as money. Gallant later confirmed that the apartment in question was leased to Defendant's wife. Gallant had observed Defendant's vehicle parked behind the apartment. building in November 2004.

(Court's Oct. 6, 2006 Mem. 4-6, ECF No. 79 (internal citations omitted).)

*Spruill*, 373 F. App'x 318.  Petitioner did not petition for a writ of certiorari in the United States Supreme Court.

On July 11, 2011, Petitioner timely filed the instant Motion seeking habeas corpus relief under 28 U.S.C. § 2255.  (ECF No. 106.)  He subsequently filed an Amended Motion.  (ECF No. 109.)  Petitioner filed a Memorandum of Law in support of his Motion.  (Pet'r's Mem., ECF No. 117.)  The Government filed a Response to Petitioner's Motion on April 2, 2012.  (Gov't Resp., ECF No. 116.)  On May 2, 2012, Petitioner filed a Traverse, replying to the Government's Response.  (Pet'r's Traverse, ECF No. 118.)

## II.  LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Relief under this provision is generally available "to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."  *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989).

While the court may in its discretion hold an evidentiary hearing on a Section 2255 petition, *Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989), such a hearing need not be held if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see also United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir.

4

1994).

## III.    DISCUSSION

Petitioner raises twelve grounds which he claims entitle him to relief.  Petitioner makes the following claims of ineffective assistance of counsel:  (1) trial counsel failed to properly advise Petitioner of his right to plead guilty or request a bench trial; (2) trial counsel was ineffective during the pretrial period; (3) trial counsel failed to investigate exculpatory evidence, object to the unlawful admission of evidence, and move for a continuance or mistrial; (4) trial counsel failed to advise Petitioner as to his right to testify at trial; (5) trial counsel failed to request proper jury instructions and did not object to improper prosecutorial statements; (6) trial counsel failed to object at sentencing; (7) trial counsel failed to move for a downward departure from the United States Sentencing Guidelines; (8) appellate counsel failed to present Petitioner's strongest appealable issues; (9) trial and appellate counsel did not offer effective assistance because of a conflict of interest; and (10) the cumulative impact of ineffective pretrial, trial, and appellate counsel was prejudicial.  Petitioner's final two claims concern the constitutionality of his conviction and sentence.  Petitioner argues that he has been denied his Second Amendment right "to keep and bear arms".  (Pet. 12.)  Petitioner also claims that his conviction and sentence "are violative of the First, Second, Fourth, Fifth, Sixth, and Eighth Amendments" to the United States Constitution.  (*Id*.)  A review of the record reveals that Petitioner's claims lack all credibility.

### A.    Ineffective Assistance of Counsel

#### 1.    *Legal Standard*

To establish ineffective assistance of counsel in violation of the Sixth Amendment, a

defendant must show that:  1) his or her attorney's performance was deficient; and 2) the

deficient performance prejudiced his or her defense.  *Strickland v. Washington*, 466 U.S. 668,

687 (1984).  To establish deficient representation, a defendant must show that counsel's

performance "fell below an objective standard of reasonableness under prevailing professional

norms."  *Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999) (citing *Strickland*, 466 U.S. at 688).

To establish prejudice, a defendant must show that "counsel's errors were so serious as to

deprive him of a fair trial, a trial whose result is reliable."  *Strickland*, 466 U.S. at 687.  "It is not

enough for the defendant to show that the errors had some conceivable effect on the outcome of

the proceeding."  *Id*. at 693.  Rather, "[t]he defendant must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different."  *Id*. at 694.  Under *Strickland*, counsel is presumed to have acted within the

range of "reasonable professional assistance," and the defendant bears the burden of

"overcom[ing] the presumption that, under the circumstances, the challenged action 'might be

considered sound trial strategy.'"  *Id*. at 689 (citation omitted).  While a defendant has the right

to effective assistance of counsel, courts have explained that the Constitution does not guarantee

the right to a perfect trial.  *See Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002) ("[T]he

court is not engaging in a prophylactic exercise to guarantee each defendant a perfect trial with

optimally proficient counsel, but rather to guarantee each defendant a fair trial, with

constitutionally competent counsel.").  "Judicial scrutiny of counsel's performance must be

highly deferential" as "there are countless ways to provide effective assistance in any given

case."  *Strickland*, 466 U.S. at 689.

        In *Thomas v. Varner*, 428 F.3d 491 (3d Cir. 2005), the Third Circuit addressed how

district courts should proceed in assessing whether an attorney's performance was

constitutionally deficient under the first *Strickland* prong.  In *Thomas*, the Court stated:

> [s]imilar to instances in which a court disposes of an ineffective assistance of counsel
> claim by analyzing the prejudice prong without considering whether counsel's
> performance was deficient, it is appropriate for a court to dispose of a case in which
> conduct is objectively reasonable without considering counsel's strategy.  Put
> differently, no hearings as to counsel's strategy are necessary in cases in which the
> conduct challenged is objectively reasonable, as courts can simply reject the claims
> on reasonableness grounds.

*Id*. at 501 n.10 (internal citations and quotations omitted).

> 2.       *Ground One: Failure to Advise on Bench Trial and Guilty Plea*

"Petitioner's central claim is that his trial counsel was ineffective for failing to advise

him that he could have requested a bench trial on stipulated facts."  (Gov't Resp. 2.)  Petitioner

argues that had he proceeded to a bench trial, he might have obtained a reduction in his

Guidelines range for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.  (Pet'r's Mem.

24.)  Petitioner claims that counsel failed to advise him that he had the option to request a bench

trial, and also failed to advise him that he had little chance of prevailing at trial.  (Pet. 17-18.)

Petitioner also blames counsel for not advising him "that he could plead guilty or nolo

contendre" without cooperating with the Government.  (*Id*. at 18.)[4]

> a.       Petitioner's Bench Trial Claim

Petitioner claims that he had no knowledge that he could proceed to a bench trial.

Petitioner's Presentence Investigation Report reveals that Petitioner has a long criminal history.

---

[4] Petitioner cites to the Supreme Court's recent rulings in *Missouri v. Frye*, 132 S. Ct.
1399 (2012), and *Lafler v. Cooper*, 132 S. Ct. 1376 (2012).  (Pet'r's Traverse 11.)  These cases
are inapposite.  There is no evidence here that Petitioner's counsel was ineffective in failing to
transmit a Government plea agreement offer to Petitioner.

7

He has been arrested more than twenty times.  He has at least six prior convictions, four of which are for serious violent offenses.  Most significantly, the Presentence Report reflects that Petitioner had previously been convicted, following a bench trial, of aggravated assault, criminal conspiracy, and carrying a firearm.  He received a sentence of seven to twenty years as a result of this bench trial conviction.  Petitioner obviously knew about bench trials.  He certainly could have requested a bench trial, either by himself or through his attorneys, if he wanted a bench trial.  He chose not to.  Even if we were to accept Petitioner's description of counsel's performance, that performance was not unreasonable.  Counsel would not have been wrong to advise Plaintiff that stipulating to the facts to be presented at bench trial would have been a pointless and incriminating endeavor.

Petitioner also cannot demonstrate that he suffered prejudice.  Bench trials are not automatically granted to defendants in the federal system.  Federal Rule of Criminal Procedure 23(a) requires that criminal trials be conducted in front of a jury unless "(1) the defendant waives a jury trial in writing, (2) the government consents, and (3) the court approves."  Fed. R. Crim. P. 23(a).  There is nothing in the record to indicate that the Government would have consented to a bench trial on stipulated facts.  In fact, the opposite is true.  The Government states in its responses that it "defies common sense to assume that there are circumstances in which the government would have agreed to a bench trial on stipulated facts," or that Petitioner would have in fact stipulated to any facts.  (Gov't Resp. 5.)

Even if it were somehow determined that counsel's performance was deficient, there is no evidence of resulting prejudice.  Petitioner claims he would have proceeded to a bench trial on stipulated facts.  However, those facts would have confirmed exactly what the jury

determined—Petitioner's overwhelming guilt.  Any suggestion that a bench trial would have

resulted in Petitioner's acquittal is silly.  Much of the Government's case against Petitioner

consisted of Petitioner's own inculpatory statements given to authorities after being given his

*Miranda* warnings.  There is simply no reason to believe that allegedly incomplete advice from

counsel prejudiced Petitioner in a way that "undermine[s] confidence in the outcome" of the

proceedings.  *Strickland*, 466 U.S. at 694.

Petitioner's claim that he would have been entitled to a Guidelines range reduction under

§ 3E1.1 for acceptance of responsibility is also without merit.  Petitioner points to cases in which

such reductions were granted after bench trials.  The cases that Petitioner cites, however, are

easily distinguished.  The defendants in those cases generally sought to preserve constitutional

claims while stipulating to all facts.  *See, e.g.*, *United States v. Villasenor-Cesar*, 114 F.3d 970,

973 (9th Cir. 1997); *United States v. Ryan*, 964 F. Supp. 526, 526 n.1 (D. Mass. 1997).

Petitioner has not indicated what constitutional claims would have justified proceeding to a

bench trial on stipulated facts that overwhelmingly spoke to his guilt.[5]  There is no reason to

believe that a bench trial would have resulted in a sentence any different than the sentence

Petitioner received, which was within the Sentencing Guidelines.

Petitioner cannot satisfy either prong of *Strickland* related to his claim that counsel failed

to advise him about the possibility of a bench trial.  Accordingly, this ineffective assistance claim

is denied.

---

[5]  Clearly, the Court's decision on Petitioner's suppression motion would not have
justified proceeding to a bench trial.  That decision was affirmed by the Third Circuit on
Petitioner's direct appeal.

b.   Petitioner's Guilty Plea Claim

Petitioner argues that he was denied effective assistance of counsel because counsel failed to inform him that he could enter into an "open guilty plea," or a plea made without the benefit of an agreement with the Government. *See United States v. Casiano*, 113 F.3d 420, 423 (3d Cir. 1997) (explaining the concept of an open guilty plea). As noted above, the record reflects that when Petitioner was arrested, he was told by Special Agent Gallant that he was being investigated on federal drug trafficking charges, that he was going to be indicted, and that he should consider cooperating with the FBI. In fact, Petitioner participated in several proffers with the Government. Moreover, the Presentence Report reveals that of Petitioner's six prior convictions, four were a result of guilty pleas, one resulted from a jury trial, and the sixth was the bench trial. Given Petitioner's extensive criminal history and his many interviews with the authorities, his suggestion that he did not know that he could enter an open guilty plea or a cooperation guilty plea makes no sense.

Petitioner's assertion that his counsel was ineffective is nothing more than a bald assertion. To say that it is suspect is an understatement given Petitioner's extensive prior criminal history. Moreover, Petitioner's trial counsel is a well-respected, experienced criminal attorney, who has handled many criminal cases, including both pleas and trials. We reject Petitioner's assertion that counsel did not discuss Petitioner's options with him.

Petitioner also claims that counsel did not advise him of the consequences of a guilty plea as it concerned his Guidelines range determination. (Pet. 18-19 at ¶¶ 30-31.) Petitioner does not claim that counsel actively misled him. Petitioner does not claim that there was a plea bargain offer that would have significantly reduced his sentence exposure. Petitioner essentially argues

that counsel did not inform him of the nuances of the Sentencing Guidelines' "acceptance of responsibility" provisions, and that had he done so, Petitioner would have entered a plea of guilty. Again, Petitioner's argument defies common sense. Petitioner is an experienced criminal who was talking to the authorities about cooperating. We reject the argument that he blindly went to trial without knowing the consequences of pursuing a bench trial, a jury trial, an open plea, or a cooperating plea.

We are satisfied that the record is more than sufficient to allow us to conclude that counsel's performance was not deficient.[6] Petitioner's extensive experience in the criminal justice system, which included juvenile adjudications, adult guilty pleas, a jury trial and a bench trial, and his repeated filing of *pro se* motions, convinces us that he certainly knew what he was doing when he chose to request a jury trial. Petitioner has not credibly shown that counsel's performance was deficient. Accordingly, we deny his claim that he received ineffective assistance of counsel.

3.      *Ground Two:  Failure to Move for Suppression of Evidence*

Petitioner claims that trial counsel "unprofessionally failed to timely, properly, and effectively move for suppression of evidence material to" his conviction and sentence. (Pet. 4.) Petitioner does not specify what material evidence counsel failed to attempt to suppress. Counsel did in fact file a motion to suppress Petitioner's inculpatory statements. (Mot. to Suppress.) A hearing was held on that motion and the motion was denied. Petitioner chose to

_____

[6] Petitioner claims that the Government's treatment of his claim is "cursory," and that the Government has failed to present law or facts that allow it to carry its burden. (Pet'r's Traverse 10.) Petitioner bears the burden of demonstrating that his counsel was constitutionally ineffective; the Government does not bear the burden of proving counsel's effectiveness.

11

testify at the suppression hearing.  We are aware of no other evidence which might have been suppressed had Petitioner's counsel so moved.  Counsel's performance was satisfactory. Petitioner's claim that counsel was ineffective for failing to move for suppression is meritless.

> 4.     *Ground Three:  Errors at Trial*

Petitioner alleges that counsel "failed to investigate or present available, material, exculpatory evidence and testimony at trial and failed to timely object to the unlawful admission of evidence by the prosecution and failed to timely and professionally move for continuance or mistrial."  (Pet. 5.)  Petitioner does not identify the exculpatory evidence to which he refers nor does Petitioner specify which evidence counsel should have objected to.  Petitioner also offers no grounds upon which his counsel should have sought a continuance or mistrial.

Having examined the trial record, we are satisfied that counsel's performance was not deficient.  Counsel mounted the best defense that he could, given the overwhelming evidence of Petitioner's guilt.  The lack of available exculpatory evidence owes not to counsel's ineffectiveness, but to Petitioner's admitted culpability for his crime.  Indeed, counsel investigated Petitioner's statements and repeatedly moved to hold the Government to its disclosure obligations.

In addition, counsel repeatedly objected to the admission of evidence.  Counsel moved to suppress the inculpatory statements made by Petitioner, which formed the core of the Government's case-in-chief.  Counsel sought to exclude evidence of Petitioner's prior convictions and other evidence that could be prejudicial.  (Mot. in Limine.)  Finally, Petitioner's counsel sought to dismiss the Indictment prior to trial (Mot. to Dismiss), and moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 at the conclusion of the

Government's presentation of evidence and testimony.  (May 24, 2006 Trial Tr., ECF No. 77 (on file with Court).)

Petitioner's contention that counsel was ineffective during trial is meritless.  Counsel's performance clearly met the standards of objectively competent representation.  Accordingly, Petitioner's third ineffectiveness claim is denied.

5.     *Ground Four:  Failure to Advise of Right to Testify*

Petitioner argues that counsel did not advise him "as to all facts and law relevant to his decision whether to testify at trial."  (Pet. 6.)  Petitioner claims that counsel did not tell him that the "determination as to whether to testify was ultimately [Petitioner's] to make."  (*Id*.)  Petitioner states that had he known this, "there is a reasonable probability that [he] would have taken the witness stand and directly rebutted the allegations of the indictment and the prosecution's evidence."  (*Id*.)

Petitioner has spent his entire life in the criminal justice system.  He admitted, under oath, to being familiar with his trial rights.  (May 9, 2006 Supp. H'rg Tr. 104, ECF No. 41 (on file with Court).)  He testified at the Suppression Hearing.  Petitioner's assertion that he was not aware of his right to testify if he so chose is silly.  After Petitioner's testimony at the suppression hearing, counsel indicated that he "[did not] have a clue" as to whether his client would testify.  (*Id*. at 124.)  Counsel next stated that he planned to advise Petitioner that it would probably be best "for him not to testify in this case, *but it will be his choice*."  (*Id*. at 125 (emphasis added).)  Petitioner was seated in the courtroom when counsel made this statement.  He was also present for the discussion between this Court and the attorneys, regarding the significant amount of impeachment material the Government was prepared to introduce if Petitioner testified.  (*Id*. at

13

122-25.)

There is no reasonable basis upon which to conclude that Petitioner was unaware of his right to testify. Counsel was not ineffective in his performance.

        6.     *Ground Five: Failure to Request Jury Instructions or Object to Improper Statements*

Petitioner claims that counsel "failed to timely request appropriate jury instructions and to timely object to insufficient instructions." (Pet. 7.) Petitioner also argues that counsel failed to object to improper arguments made by the prosecution and request curative instructions. (*Id*.)

Petitioner's claim with regard to jury instruction is meritless. Trial counsel submitted a 29-page list of proposed jury instructions. (Points for Charge, ECF No. 45.) Petitioner does not specify how these instructions were lacking. Counsel's points for charge were well-written and appropriate. They comported with what would be expected of a competent attorney. Petitioner's claim that he was denied effective assistance in this regard is baseless.

Petitioner's second claim is curious. We do not know what Petitioner refers to when he writes of "improper argument," and we are unaware of any curative instruction that would have been warranted. Although we construe Petitioner's claims liberally, we cannot grant relief on a claim that lacks any specificity or support. Accordingly, Petitioner's ineffective assistance claim is denied.

        7.     *Grounds Six and Seven: Failure to Seek Downward Departure*

Petitioner claims that counsel "failed to investigate or present available evidence and legal authority material" at his sentencing, or "object to unlawful, false and unreliable evidence used to determine [Petitioner's] guideline sentence range and ultimate sentence." (Pet. 7-8.)

14

Petitioner does not elaborate on the evidence to which he refers.  Petitioner also claims that counsel "failed to move for appropriate downward departure or a downward variance under 18 U.S.C. § 3553(a)."  (Pet. 8.)  All of these claims lack merit.

Petitioner's counsel vigorously attempted to challenge Petitioner's Guidelines range calculation and ultimate sentence.  Although counsel did not use the words "departure" or "variance," the sentencing memorandum prepared by counsel clearly seeks a downward departure from the Guidelines range, as assessed in the PSR.  Counsel urged the Court, in his sentencing memorandum, "to impose a sentence of 240 months."  (Def.'s Sent. Mem. 5, ECF No. 84.)  This would have been the maximum departure permitted by law, given the 20-year mandatory minimum sentence that Petitioner faced.  Petitioner's counsel also argued that a Guidelines range of 262 to 327 months imprisonment, as opposed to 324 to 405 months, was a more appropriate calculation.  (*Id*. at 3.)

Petitioner's claim that counsel did not seek a downward departure or variance is simply wrong.  Counsel asked the Court to impose a sentence significantly below Petitioner's Guidelines range, and presented a series of arguments, including those based on § 3553.  Counsel also challenged the calculation of Petitioner's Guidelines range.  That the Court did not agree with counsel does not reflect on counsel's performance, which was objectively reasonable.  Petitioner's claims that counsel did not investigate or object to material evidence is devoid of specifics and offers no ground for relief.

        8.    *Ground Eight:  Appellate Counsel's Failure to Raise Appealable Issues*

Petitioner claims that counsel "failed to investigate or present the strongest issues available" on direct appeal "and failed to preserve viable issues for collateral review."  (Pet. 9.)

15

Petitioner does not identify what issues were strong or viable, and what was not preserved.

On appeal, counsel challenged the Court's denial of Petitioner's motion to suppress and the Court's use of § 3553 factors in determining Petitioner's sentence. These arguments were rejected by the Third Circuit. *Spruill*, 373 F. App'x at 320-21.

An attorney is not ineffective for failing to raise, on appeal, every issue suggested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Instead, appellate counsel is entitled to "winnow[ ] out weaker arguments on appeal and focus[ ] on one central issue if possible, or at most on a few key issues." *Id*. at 751-52. It was not unreasonable for counsel to challenge Petitioner's sentence on these grounds, which represented a multipronged attack on the evidence underlying Petitioner's conviction and the length of his sentence. Petitioner identifies no issues that he believes appellate counsel should have raised. Accordingly, his ineffective assistance of appellate counsel claim is denied.

### 9. *Ground Nine: Counsel's Conflict of Interest*

Petitioner claims that "counsel labored under an actual conflict of interest which adversely affected their performance during the pretrial, plea, trial, sentencing, and direct appeal process in this case," and that he "owed a 'duty' other than to Mr. Spruill" which "adversely affected the performance of counsel." (Pet. 10.) Petitioner does not elaborate on this claim, although he appears to implicate all three attorneys who represented him. We have no basis on which to conclude that any of Petitioner's attorneys were burdened by any type of conflict, or that any conflict prejudiced Petitioner's rights. All of Petitioner's attorneys exhibited professional and competent behavior at all times during their representation of Petitioner. Petitioner's claim is simply baseless. Accordingly, it is denied.

16

### 10. Ground Ten:  Cumulative Impact of Ineffective Counsel

Petitioner claims that the nine examples of ineffective assistance he previously cited, when added together, prejudiced him.  (Pet. 11; Pet'r's Mem. 27.)  As noted above, none of Petitioner's ineffective assistance claims has any merit.  They remain meritless when added together.  Petitioner was effectively represented by counsel at all stages of his pretrial, trial, sentencing, and appeal proceedings.  Accordingly, Petitioner's tenth ineffective assistance claim is denied.

### B. Constitutionality of Petitioner's Conviction

### 1. Petitioner's Second Amendment Claim

Petitioner claims that he was "denied his Second Amendment constitutional right 'to keep and bear arms'" by virtue of his "conviction and sentence for violation of 18 U.S.C. § 922(g)(1)" for "the type of gun . . . commonly found in the home."  (Pet. 12.)  Petitioner was convicted of possession with intent to distribute cocaine; he was not convicted of firearm possession pursuant to 18 U.S.C. § 922(g)(1).  Petitioner, did, however, receive an upward adjustment to his Guidelines range, pursuant to U.S.S.G. § 2D1.1(b)(1), for possession of a semi-automatic AK-47 rifle during the course of his offense.  (Judgment Attach. 1.)[7]  Since we review Petitioner's *pro se* claims liberally, we assume he is challenging  the upward adjustment under § 2D1.1 on Second Amendment grounds.

The Second Amendment to the United States Constitution protects an individual's

---

[7] The relevant advisory Guideline mandates a two-level increase in a defendant's offense level if a "dangerous weapon (including a firearm) was possessed."  U.S.S.G. § 2D1.1(b)(1).  The testimony at trial established that Petitioner frequently carried a firearm when he was dealing drugs.

private right to keep and bear arms.  *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008).

The Second Amendment does not, however, foreclose all limitations on firearm ownership and

possession.  In fact, the Supreme Court has expressly stated that laws forbidding the "possession

of firearms by felons," such as Section 922(g)(1), are constitutional, as are other laws which

reasonably circumscribe firearm use.  *Heller*, 554 U.S. at 626.

Petitioner's assertion that using a firearm in furtherance of a drug trafficking offense

constitutes a constitutionally protected activity is absurd.  Petitioner, as a convicted felon, had no

right to possess an automatic weapon, and he certainly had no right to carry a firearm when he

was dealing drugs.  Petitioner's Second Amendment claim is devoid of merit, and is denied.

2.      *Petitioner's General Unconstitutionality Claim*

Petitioner claims that his conviction violated his First Amendment rights to freedom of

speech and petition, his Second Amendment right to keep and bear arms, his Fourth Amendment

right to be free of unreasonable search and seizure, his Fifth Amendment right to due process of

law, several of his Fifth and Sixth Amendment trial rights, and his Eighth Amendment right to

be free of cruel and unusual punishment.  (Pet. 12-13.)  Petitioner offers no details on how any of

these rights were compromised by his conviction.

We previously addressed Petitioner's Second Amendment claim.  We now address the

remainder of his constitutional claims, the majority of which are unclear, and all of which are

without merit.  Petitioner has not been denied any right to speak or petition freely; this Court has

permitted and considered an array of *pro se* motions and petitions over the course of the last

seven years.  Petitioner has similarly not been denied his right to be free from unreasonable

search and seizure; he cannot point to any search or seizure that has been conducted against his

18

"person[], houses, papers and effects" in violation of the Fourth Amendment.  *See* U.S. Const. amend. IV.  Petitioner's claims that he was denied due process of law, a jury trial, confrontation of witnesses, counsel, the ability to present a defense, and compulsory process are similarly meritless.  Petitioner was amply represented by competent counsel prior to his conviction, and a jury trial was conducted in this Court.  All of Petitioner's Fifth and Sixth Amendment rights were vindicated at trial.

Finally, Petitioner's claim that his Eighth Amendment rights are being violated, presumably by the length of his prison sentence, is meritless.  Although the Supreme Court has articulated a principle that grossly disproportionate prison sentences may implicate the Eighth Amendment, *Lockyer v. Andrade*, 538 U.S. 63, 76-77 (2003) (upholding sentence of 50-years-to-life for petty theft under state's "three strikes" law), Petitioner's sentence is not grossly disproportionate to the crime he committed.  Petitioner was convicted of a serious drug trafficking crime after an extensive and dangerous criminal career, and there is ample evidence that Petitioner used dangerous weapons in furtherance of drug trafficking.  Petitioner's sentence is hardly inappropriate given the severity of his crime and his extensive criminal history.  Moreover, Petitioner's sentence was within the Sentencing Guidelines.

Accordingly, Petitioner's constitutional claims are denied as meritless.

## C.      Certificate of Appealability

Finally, the Government requests an order that no certificate of appealability issue.  (Gov't. Mem. 14-15.)  The Third Circuit's Local Appellate Rules instruct:

> At the time a final order denying a petition under 28 U.S.C. § 2254 or § 2255 is issued, the district judge will make a determination as to whether a certificate of appealability should issue.  If the district judge issues a certificate, the judge will state

the specific issue or issues that satisfy the criteria of 28 U.S.C. § 2253. If an order denying a petition under § 2254 or § 2255 is accompanied by an opinion or a magistrate judge's report, it is sufficient if the order denying the certificate references the opinion or report.

Third Circuit L.A.R. 22.2.  Under 28 U.S.C. § 2253, a petitioner seeking a certificate of appealability must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As discussed above, Petitioner has raised no viable claims, and no reasonable jurist would disagree with our assessment.  Therefore, a certificate of appealability will not issue.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's Motion is denied in full.  This Court finds no basis to hold an evidentiary hearing[8] or issue a certificate of appealability.

An appropriate Order follows.

BY THE COURT:

_____
**R. BARCLAY SURRICK, J.**

---

[8] In his Traverse, Petitioner repeatedly requests an evidentiary hearing.  (Pet'r's Traverse 13-14.)  There is no basis for granting an evidentiary hearing.  In this case, "the files and records . . . conclusively show that [Petitioner] is entitled to no relief."  28 U.S.C. § 2255(b).

20